

DOCKETED
MAY 1 8 2001

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



**F I L E D**

MAY 1 7 2001

**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

UNITED STATES OF AMERICA

**01CR469**

v.

BAINBRIDGE MANAGEMENT,
  f/k/a BRADDOCK MANAGEMENT, L.P.,
ROGER EHMEN,
DR. RAVI BARNABAS,
DR. SHESHIQIRI RAO VAVILIKOLANU,
      a/k/a DR. RAO,
DR. KUMAR M. KALIANA,
      a/k/a DR. KUMAR

)
)
)
)
)
)
)
)
)
)
)

Violations: Title 18,
United States Code,
Sections 2, 1341, 1343,
1347, 1962, 1963, 982 and
Title 42, United States
Code Section 1320a-7b(b)

**JUDGE CONLON**

MAGISTRATE JUDGE SIDNEY I. SCHENKIER

<u>COUNT ONE</u>

The SPECIAL NOVEMBER 1999 GRAND JURY charges:

1.  At times material to the indictment:

        a.  Edgewater Medical Center, f/k/a Northside Operating Co. d/b/a Edgewater Hospital and Medical Center ("Edgewater" or "Edgewater Hospital") was a hospital, located at 5700 North Ashland Avenue, Chicago, Illinois.  Edgewater was an authorized Medicare and Medicaid provider.

        b.  Defendant BAINBRIDGE MANAGEMENT, f/k/a BRADDOCK MANAGEMENT, L.P. ("BRADDOCK") was a limited partnership.  Defendant BRADDOCK had a management contract with Edgewater which provided that defendant BRADDOCK would act as the exclusive manager of the day-to-day operations of Edgewater, and that defendant BRADDOCK would supervise and manage all billings, collections, cost reporting and other financial matters related to the day-to-day operation of the hospital.

c. Defendant ROGER EHMEN ("EHMEN") was the Senior Vice President for Edgewater Hospital. He was one of the key administrators at the hospital. Defendant EHMEN had significant responsibilities, which included recruiting doctors for Edgewater's medical staff, signing physicians' contracts and other documents on behalf of the hospital, and handling certain complaints from doctors and staff. Defendant EHMEN was also responsible for maintaining and increasing the number of patients admitted to the hospital. Physicians and others reported directly to defendant EHMEN concerning certain matters. Defendant EHMEN was employed by the management company, defendant BRADDOCK.

d. Defendant Dr. RAVI BARNABAS ("BARNABAS") was a medical doctor, licensed by the State of Illinois. He was an internist. Defendant BARNABAS admitted patients to Edgewater Hospital, and he acted as an attending physician for certain patients hospitalized at Edgewater. Defendant BARNABAS submitted bills to insurers for his services. Defendant BARNABAS had a Medical Directorship contract with Edgewater, and a Physician Recruitment contract. Both contracts were signed by defendant EHMEN.

e. Dr. Sheshiqiri Rao Vavilikolanu, a/k/a Dr. Rao ("Rao"), was a medical doctor, licensed to practice medicine in the State of Illinois. Rao was an internist and an anesthesiologist. Rao operated a clinic located on the south side of Chicago. Rao referred certain patients to Edgewater Hospital. Rao had two companies, one known as Rao, M.D., S.C., and one known as

2

Florascribe, Inc. ("Florascribe"). From approximately April 1, 1997 through May 1999, Rao's company, Rao M.D., S.C., had a service contract with Edgewater, under which Rao's company was the exclusive provider of anesthesia services at Edgewater. From approximately November 1997 to February 1998, Rao's company, Florascribe, had a Management Services Agreement with Edgewater, under which Rao's company was to provide services for Edgewater's Detoxification Program, which included marketing and coordinating aftercare treatment. The Florascribe contract was signed by defendant EHMEN.

f. Defendant Dr. KUMAR M. KALIANA, a/k/a Dr. KUMAR ("KUMAR") was a medical doctor, licensed by the State of Illinois. He was an internist. Defendant KUMAR referred certain patients for admission to Edgewater Hospital. Defendant KUMAR operated a clinic located on the south side of Chicago. Defendant KUMAR was barred from participating in the Medicaid Program, and was prohibited from submitting claims for payment for services and treatment rendered to Medicaid beneficiaries.

g. Medicare was a national health insurance program pursuant to Title 18 of the Social Security Act. The Health Care Financing Administration ("HCFA") was a federal agency within the United States Department of Health and Human Services ("HHS"), which administered the Medicare program through its contractors. Medicare provided free or below-cost health care benefits to certain eligible beneficiaries, primarily individuals who were

sixty-five years of age and older.

h. Medicare Part A helped pay for inpatient hospital care. Medicare Part B helped pay for certain physician services, outpatient services, and other medical services.

i. The Health Care Service Corporation and Wisconsin Physician Services were private health insurance carriers which contracted with HCFA at different times to process Medicare claims in Illinois, and make payments for services covered by Medicare.

j. Medicaid was a medical assistance program pursuant to Title 19 of the Social Security Act. In Illinois, Medicaid was administered by the Illinois Department of Public Aid ("IDPA"). Medicaid provided free or below-cost health care benefits, including hospitalization, physician visits and prescription drugs, to certain eligible beneficiaries, primarily low-income individuals. Medicaid in Illinois was funded in part by IDPA and in part by HHS. Medicaid reimbursed participating physicians who provided medically necessary examinations and procedures to eligible beneficiaries.

k. Medicare and Medicaid, as well as certain private insurers, ordinarily authorized payment for physician and hospital services only if those services were "medically necessary", that is, services required because of disease, disability, infirmity, or impairment. Medicare and Medicaid, as well as many private insurers, would not pay for services and treatment if the patient did not meet criteria which indicated that the patient needed the

4

relevant services and treatment.

l. Paying monies in exchange for patient referrals, and accepting monies in exchange for patient referrals, where such payments were made knowingly and willfully, was prohibited by federal statute, namely, Title 42, United States Code, Section 1320a-7b. Medicare and Medicaid would not pay for services provided as a result of referrals which were made in violation of that statute.

m. The Medicare program, and certain private insurers, ordinarily paid most, but not all, of the costs of health care services, and required their beneficiaries to pay a specified portion of those costs, namely, a deductible (a set amount that had to be paid) or a co-payment (a percentage of the total cost). Medicare and certain private insurers prohibited the waiver of deductibles or co-payments, unless the patient was unable to pay.

n. The Medicare program required participating hospitals to file annual Cost Reports, so that Medicare could accurately determine the amount of money that the Medicare program owed to the hospital or the amount that the hospital owed to Medicare.

o. When a hospital submitted a Cost Report to Medicare, the hospital had to certify that, during the one-year period covered by the Cost Report, it had complied with all laws and regulations regarding the provision of health care services.

2. Beginning no later than October 1996, and continuing until at least October 1998, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

> BAINBRIDGE MANAGEMENT, f/k/a BRADDOCK MANAGEMENT, L.P.,
> ROGER EHMEN,
> DR. RAVI BARNABAS,
> DR. KUMAR M. KALIANA, a/k/a DR. KUMAR,

defendants herein, together with Rao and others, known and unknown to the grand jury, devised and intended to devise, and participated in a scheme and artifice to defraud and to obtain money and property from Medicare, Medicaid, and certain private insurers by means of materially false and fraudulent pretenses, representations and promises, and by means of material omissions, and to fraudulently deprive certain patients of the intangible right of honest services, which scheme is further described below.

### Scheme to Defraud

3. It was part of the scheme that defendants BRADDOCK, EHMEN, BARNABAS, KUMAR, together with Rao, took the following actions:

a. The defendants hospitalized certain patients, and caused others to hospitalize certain patients, knowing that those patients did not need to be treated in a hospital and did not meet medical criteria for hospitalization.

b. The defendants performed, and caused others to perform, medically unnecessary procedures and testing, including but not limited to blood tests, x-rays, and cardiac related tests and procedures.

6

c. Defendants BRADDOCK, EHMEN, and BARNABAS gave, and caused others to give, kickbacks, bribes, money, and other remuneration and incentives (hereinafter referred to as "kickbacks") to certain individuals, including Rao, defendant KUMAR, and certain patient recruiters, in exchange for patient referrals. They concealed those kickbacks from insurers, knowing that disclosure of the kickbacks would result in claim denials and investigations.

d. The defendants concealed, and caused others to conceal, from certain patients, material information concerning the payment of kickbacks in exchange for admissions, including the fact that those kickbacks were intended to, and did, influence the decisions of certain doctors, thereby depriving those patients of their doctors' honest services.

e. The defendants generated hospital admissions, and caused others to generate hospital admissions, by giving patients cash or other benefits, by coaching patients to lie about their physical condition, by promising that hospital services would cost the patients nothing, and by falsely representing to certain patients that they needed to be hospitalized, knowing that those patients did not need hospitalization.

f. The defendants created, and caused others to create, false records to justify and support claims submitted to insurers, including false medical records and false business records.

7

g.   The defendants submitted and caused others to submit Cost Reports to Medicare knowing that the Cost Reports contained false statements.

h.   The defendants submitted, and caused others to submit, fraudulent claims to Medicare, Medicaid and certain private health care insurers, which included charges for (i) medically unnecessary admissions, services, procedures, and testing; and (ii) for services rendered to patients who were referred to the hospital in exchange for kickbacks.  Those fraudulent claims resulted in payments by the insurers that totaled at least $1,000,000.

### Agreement with Rao

4.   It was further part of the scheme that in or about October 1996, defendants BRADDOCK, EHMEN, and BARNABAS caused Edgewater to agree to pay monies to Rao, and to give Rao a lucrative contract to provide anesthesia services to Edgewater's patients, if Rao referred a substantial number of patients to the hospital for admission.  In return, Rao agreed that he would try to admit to the hospital each month:  (a) patients for medical treatment; and (b) patients for detoxification treatment.

5.   It was further part of the scheme that in order to carry out the agreements made during the October 1996 meeting:

a. In or about April 1997, defendants BRADDOCK, EHMEN, and BARNABAS caused Edgewater to give Rao's company, Rao, M.D., S.C., a contract that enabled Rao to bill for all anesthesia services provided at the hospital, which contract was awarded to

8

Rao in return for patient admissions.

b. Between May 1997 and May 1998, defendants BRADDOCK, EHMEN, and BARNABAS caused Edgewater to pay Rao's company, Rao, M.D., S.C., approximately $15,000 a month, totaling more than $150,000, in exchange for patient admissions. Rao used a portion of those monies to pay defendant KUMAR for the admission of patients who were sent by defendant KUMAR to Edgewater for medical treatment.

c. On or about November 14, 1997, defendants BRADDOCK, EHMEN, and BARNABAS caused Edgewater to give a contract to Rao's company, Florascribe, in order to conceal the fact that Edgewater was paying Rao for patient referrals and admissions.

d. Between August 1997 and April 1998, defendants BRADDOCK, EHMEN, and BARNABAS caused Edgewater to make approximately seven payments of $20,000 each to Rao's company, Florascribe, totaling approximately $140,000, in exchange for patient admissions, and Rao used a portion of those monies to pay individuals to recruit patients to be admitted for detoxification ("detox") treatment at Edgewater.

### Medical Admissions

6. It was further part of the scheme that defendants BRADDOCK, EHMEN, and BARNABAS caused Rao to pay defendant KUMAR kickbacks of approximately $12,000 a month, totaling approximately $156,000, between May 1997 and June 1998. Defendants BRADDOCK, EHMEN, BARNABAS, and Rao caused defendant KUMAR to refer medical

patients to the hospital for admission in order to help satisfy
Rao's promise to provide a substantial number of medical patients
for admission. Those defendants also caused Rao to refer patients
to Edgewater from his own clinic, and to obtain patients for
admission by paying patient recruiters.

### Detox Admissions

7. It was further part of the scheme that defendants BRADDOCK,
EHMEN, and BARNABAS caused Rao to refer certain patients each month
to Edgewater for detox treatment. Those defendants caused Rao to
pay patient recruiters to refer patients to Edgewater for admission
for detox treatment. Those defendants also caused Rao to refer
detox patients to Edgewater from Rao's clinic.

### Recruiting Patients

8. It was further part of the scheme that the defendants
generated admissions, and caused others to generate admissions for
Edgewater, by taking the following steps, among others:

a. Defendants BRADDOCK, EHMEN, and BARNABAS caused Rao
and others to recruit homeless individuals, substance abusers, and
others who were willing to be hospitalized in order to get a meal
and a place to stay. The defendants also recruited individuals who
wanted a check up or other medical services, but did not meet
criteria for hospital admission.

b. The defendants coached, and caused others to coach,
certain patients to complain of chest pain, dizziness, abdominal
pain, and other symptoms which would justify admission, even though

the patients did not have those symptoms.

c.    Defendants BRADDOCK, EHMEN, and BARNABAS caused Rao and others to give certain individuals cash and other things of value such as cigarettes and food in order to induce those individuals to be admitted to the hospital.

d.    The defendants lied and caused other to lie to certain patients, falsely representing to those patients that they needed to be hospitalized because of medical problems, when, in fact, the patients did not need hospitalization.

e.    The defendants waived and caused others to waive insurance co-payments and deductibles for certain patients.

### Honest Services

9.    It was further part of the scheme that the defendants deprived certain patients of their doctors' honest services by concealing and causing others to conceal from certain patients, material information concerning the payment of kickbacks in exchange for admissions, including the fact that those kickbacks were intended to, and did, influence the decisions of certain doctors.  Such decisions included  (a) whether certain patients should be given treatment or tests,  (b) whether to recommend hospitalization or outpatient treatment, and (c) whether to send the patient to Edgewater Hospital or to some other hospital.

10.    It was further part of the scheme that the defendants concealed, and caused others to conceal from certain patients material information concerning the medical necessity of certain

11

procedures and testing, falsely representing, and causing others to falsely represent, to those patients that certain procedures and testing were necessary and appropriate, thereby depriving those patients of their doctors' honest services.

### Submission of Claims

11. It was further part of the scheme that the defendants submitted, and caused to be submitted, fraudulent claims seeking payment from various insurers, which included the following actions:

a. The defendants falsely represented, and caused others to falsely represent, to certain insurers that the services, testing, and procedures provided to patients were medically indicated and necessary, knowing that such services, testing and procedures were not medically indicated or necessary.

b. The defendants intentionally concealed, and caused others to conceal, the fact that there were medically unnecessary admissions, kickbacks, and waivers of co-payments and deductibles. The defendants knew that such disclosures would result in the denial of claims, and would trigger investigations.

c. The defendants prepared, and caused others to prepare, medical records that contained false entries, false diagnoses, and other false information.

d. The defendants prepared, and caused others to prepare, business records that contained false information. Those records included hospital bills that created the false appearance

that the hospital was seeking to collect co-payments and deductibles, when in fact the hospital intended to waive those payments in order to obtain patient admissions.

### Cost Reports

12. It was further part of the scheme that the defendants submitted, and caused to be submitted, to Medicare, Cost Reports for the years 1997 and 1998, with supporting documents and certifications, in order to obtain payments from the Medicare program, knowing that those documents included false representations, including the following:

a. The Cost Reports for 1997 and 1998 each included a certification falsely representing that services provided by the hospital were provided in compliance with the laws and regulations regarding the provision of health care services, when, in fact, the defendants each knew that the defendants, had violated and caused others to violate certain laws and regulations regarding the provision of health care services, including the laws and regulations pertaining to kickbacks, medically unnecessary services, and the waiver of co-payments and deductibles; and

b. The Cost Reports for the years 1997 and 1998 each included a Provider Cost Report Reimbursement Questionnaire, which contained the false representation that there had been no waivers of Medicare deductibles and/or co-payments during the calendar years of 1997 and 1998, when in fact, the defendants had waived, and caused to be waived, deductibles and/or co-payments in order to

induce patients to be admitted to Edgewater Hospital.

### Concealment

13.   It was further part of the scheme that defendants BRADDOCK, EHMEN, BARNABAS, KUMAR, and others did misrepresent, conceal, hide and cause to be misrepresented, concealed and hidden the purposes of and acts done in furtherance of this fraud scheme.

### Use of the Mails and Wires

14.   It was further part of the scheme that defendants BRADDOCK, EHMEN, BARNABAS, KUMAR, and others executed and attempted to execute this scheme by causing various things, including money in the form of checks, to be sent through the mail, and funds to be transferred by interstate wire.

### Mail Fraud:  Payment to Edgewater

15.   On or about June 11, 1998, at Chicago, in the Northern District of Illinois, Eastern Division,

BAINBRIDGE MANAGEMENT, f/k/a BRADDOCK MANAGEMENT, L.P.,
ROGER EHMEN,
DR. RAVI BARNABAS,
DR. KUMAR M. KALIANA, a/k/a DR. KUMAR,

defendants herein, for the purpose of executing the above described scheme, and attempting to do so, did knowingly cause to be delivered by mail, according to the directions thereon, an envelope, containing a check from Medicaid, an insurance provider, made payable to Edgewater, number 81600236, which included payment in the approximate amount of $4,757, relating to patient J. And., who was referred to Edgewater by defendant KUMAR as part of the

14

scheme described above, which envelope was addressed to Edgewater,

in Chicago, Illinois;

In violation of Title 18, United States Code, Sections 1341

and 2.

## COUNTS TWO THROUGH SIX

### Mail Fraud: Payments to Edgewater

The SPECIAL NOVEMBER 1999 GRAND JURY further charges:

1. Paragraphs 1 through 14 of Count One of this indictment are realleged and incorporated as though fully set forth herein.

2. On or about the dates set forth below, each such date constituting a separate count of this indictment, at Chicago, in the Northern District of Illinois, Eastern Division,

BAINBRIDGE MANAGEMENT, f/k/a BRADDOCK MANAGEMENT, L.P.,
ROGER EHMEN, and
DR. RAVI BARNABAS,

defendants herein, for the purpose of executing the above described scheme, and attempting to do so, did knowingly cause to be delivered by mail, according to the directions thereon, envelopes, each envelope containing a check from an insurance provider, identified below, made payable to Edgewater, which included payment in the approximate amounts set forth below, relating to the patients identified below, who were each referred to Edgewater by Kumar as part of the scheme described above, which envelopes were each addressed to Edgewater, in Chicago, Illinois, as follows:

| COUNT | PATIENT | DATE | APPROX. AMOUNT | INSURER | CHECK # |
|-------|---------|------|----------------|---------|---------|
| 2 | C. Arn. | 6/10/98 | $2,450 | Unicare | 10537251B |
| | | | | | |
| 3 | R. Har. | 5/18/98 | $2,378 | Medicaid | 81340116 |
| | | | | | |
| 4 | L. Mur. | 9/10/98 | $1,965 | Prudential | 0732961 |

16

| | | | | | |
|---|---|---|---|---|---|
| 5 | I. Str. | 6/20/97 | $4,274 | Central States | 00072454 |
| | | | | | |
| 6 | T. Ran. | 7/17/98 | $ 926 | Central Steel | - |

In violation of Title 18, United States Code, Sections 1341 and 2.

## COUNTS SEVEN AND EIGHT

### Wire Fraud: Payments to Edgewater

The SPECIAL NOVEMBER 1999 GRAND JURY further charges:

1. Paragraphs 1 through 14 of Count One of this indictment are realleged and incorporated as though fully set forth herein.

2. On or about the dates set forth below, each such date constituting a separate count of this indictment, at Chicago, in the Northern District of Illinois, Eastern Division,

> BAINBRIDGE MANAGEMENT, f/k/a BRADDOCK MANAGEMENT, L.P.,
> ROGER EHMEN, and
> DR. RAVI BARNABAS,

defendant herein, for the purpose of executing the above described scheme and attempting to do so, did knowingly cause to be transmitted in interstate commerce from Indianapolis, Indiana, to Chicago, Illinois, by means of wire and radio communications, certain signs, signals and sounds, namely: the electronic wire transfer of funds, which included payments in the approximate amounts listed below, to Edgewater relating to the individuals listed below, who were each referred to Edgewater by Kumar as part of the above described scheme:

| COUNT | PATIENT | DATE | APPROX. AMT | INSURER |
|-------|---------|------|-------------|---------|
| 7 | J. Aus. | 8/25/97 | $6,876 | Medicare |
| | | | | |
| 8 | I. Bro. | 4/30/97 | $4,972 | Medicare |

In violation of Title 18, United States Code, Sections 1343 and 2.

18

## COUNT NINE

### Health Care Fraud: Payments to Edgewater

The SPECIAL NOVEMBER 1999 GRAND JURY further charges:

1. Paragraph 1, and Paragraphs 3 through 14 of Count One of this indictment are realleged and incorporated as though fully set forth herein.

2. Beginning in or about October 1996, and continuing until at least in or about December 2000, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

BAINBRIDGE MANAGEMENT, f/k/a BRADDOCK MANAGEMENT, L.P.,
ROGER EHMEN,
DR. RAVI BARNABAS,
DR. KUMAR M. KALIANA, a/k/a DR. KUMAR,

defendants herein, together with Rao, and others, known and unknown to the grand jury, did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud health care benefit programs, including Medicare, Medicaid, and private medical insurance plans, which affected interstate commerce, and to obtain money and property owned by and under the custody and control of such health care benefit programs by means of materially false and fraudulent pretenses, representations, promises, and by means of material omissions, and to fraudulently deprive certain patients, who were the beneficiaries and participants of such health care benefit programs, of the intangible right of honest services, all in connection with the delivery of and payment for health care benefits, items, and services.

3. On or about June 20, 1997, at Chicago, in the Northern District of Illinois, Eastern Division,

BAINBRIDGE MANAGEMENT, f/k/a BRADDOCK MANAGEMENT, L.P.,
ROGER EHMEN,
DR. RAVI BARNABAS,
DR. KUMAR M. KALIANA, a/k/a DR. KUMAR,

defendants herein, did knowingly and willfully execute and attempt to execute the above described scheme to defraud, in that the defendants caused Medicaid, an insurance provider, to make a payment to Edgewater, which included the amount of approximately $4,757, in check number 81600236, relating to patient J. And., who was referred to Edgewater by defendant KUMAR as part of the defendants' scheme;

In violation of Title 18, United States Code, Sections 1347 and 2.

## COUNTS TEN THROUGH FOURTEEN

### Health Care Fraud: Payments Mailed to Edgewater

The SPECIAL NOVEMBER 1999 GRAND JURY further charges:

1.   Paragraphs 1 and 2 of Count Nine of this indictment are realleged and incorporated as though fully set forth herein.

2.  On or about the dates set forth below, each such date constituting a separate count of this indictment, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

BAINBRIDGE MANAGEMENT, f/k/a BRADDOCK MANAGEMENT, L.P.,
ROGER EHMEN, and
DR. RAVI BARNABAS,

defendants herein, did knowingly and willfully execute and attempt to execute the above described scheme to defraud, in that, on or about each of the dates set forth below, the defendants caused the insurance providers identified below to make payments to Edgewater, which included the amounts identified below, relating to the patients identified below, who were each referred to Edgewater by Kumar as part of the defendants' scheme, as follows:

| COUNT | PATIENT | DATE | APPROX. AMOUNT | INSURER | CHECK # |
|-------|---------|------|----------------|---------|---------|
| 10 | C. Arn. | 6/10/98 | $2,450 | Unicare | 10537251B |
|  |  |  |  |  |  |
| 11 | R. Har. | 5/18/98 | $2,378 | Medicaid | 81340116 |
|  |  |  |  |  |  |
| 12 | L. Mur. | 9/10/98 | $1,965 | Prudential | 0732961 |
|  |  |  |  |  |  |
| 13 | I. Str. | 6/20/97 | $4,274 | Central States | 00072454 |
|  |  |  |  |  |  |

| 14 | T. Ran. | 7/17/98 | $ 926 | Central Steel | - |

In violation of Title 18, United States Code, Sections 1347 and 2.

## COUNTS FIFTEEN THROUGH NINETEEN

### Health Care Fraud: Payments to Kumar

The SPECIAL NOVEMBER 1999 GRAND JURY further charges:

1.  Paragraphs 1 and 2 of Count Nine of this indictment are realleged and incorporated as though fully set forth herein.

2. On or about the dates set forth below, each such date constituting a separate count of this indictment, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

BAINBRIDGE MANAGEMENT, f/k/a BRADDOCK MANAGEMENT, L.P.,
ROGER EHMEN, and
DR. RAVI BARNABAS,

defendants herein, did knowingly and willfully execute and attempt to execute the above described scheme to defraud, in that the defendants caused Rao to pay Kumar, through Kumar's relatives, approximately $12,000, on or about each of the dates set forth below, in exchange for Kumar's referring patients to Edgewater for admission, using funds that the defendants caused to be paid to Rao for that purpose, as follows:

| COUNT | DATE | PAID TO | AMOUNT |
|-------|------|---------|--------|
| 15 | 7/13/97 | Kumar's Relatives | $12,000 |
| 16 | 3/20/98 | Kumar's Relatives | $12,000 |
| 17 | 4/16/98 | Kumar's Relatives | $12,000 |
| 18 | 5/22/98 | Kumar's Relatives | $12,000 |
| 19 | 6/19/98 | Kumar's Relatives | $12,000; |

In violation of Title 18, United States Code, Sections 1347 and 2.

23

## COUNTS TWENTY THROUGH THIRTY-FOUR

### Health Care Fraud: Payments to Dr. Rao

The SPECIAL NOVEMBER 1999 GRAND JURY further charges:

1. Paragraphs 1 and 2 of Count Nine of this indictment are realleged and incorporated as though fully set forth herein.

2. On or about the dates set forth below, each such date constituting a separate count of this indictment, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

BAINBRIDGE MANAGEMENT, f/k/a BRADDOCK MANAGEMENT, L.P.,
ROGER EHMEN, and
DR. RAVI BARNABAS,

defendants herein, did knowingly and willfully execute and attempt to execute the above described scheme to defraud, in that, on or about each of the dates set forth below, the defendants caused Edgewater to pay Rao approximately the amounts set forth below, through his companies, in exchange for Dr. Rao's referring and causing others to refer and admit patients to Edgewater Hospital for treatment and services, many of which were medically unnecessary, as follows:

| COUNTS | DATE | AMOUNT | COMPANY |
|--------|------|--------|---------|
| 20 | 10/14/97 | $15,000 | Rao, M.D., S.C. |
| 21 | 11/14/97 | $15,000 | Rao, M.D., S.C. |
| 22 | 12/15/97 | $15,000 | Rao, M.D., S.C. |
| 23 | 1/14/98 | $15,000 | Rao, M.D., S.C. |
| 24 | 2/10/98 | $15,000 | Rao, M.D., S.C. |
| 25 | 3/12/98 | $15,000 | Rao, M.D., S.C. |
| 26 | 4/10/98 | $15,000 | Rao, M.D., S.C. |
| 27 | 5/12/98 | $15,000 | Rao, M.D., S.C. |

24

| 28 | 8/18/97  | $20,000 | Florascribe  |
| 29 | 10/20/97 | $20,000 | Florascribe  |
| 30 | 11/26/97 | $20,000 | Florascribe  |
| 31 | 1/14/98  | $20,000 | Florascribe  |
| 32 | 2/10/98  | $20,000 | Florascribe  |
| 33 | 3/9/98   | $20,000 | Florascribe  |
| 34 | 4/10/98  | $20,000 | Florascribe; |

In violation of Title 18, United States Code, Sections 1347 and 2.

## COUNT THIRTY-FIVE

### Health Care Fraud: The 1997 Cost Report

The SPECIAL NOVEMBER 1999 GRAND JURY further charges:

1. Paragraphs 1 and 2 of Count Nine of this indictment are realleged and incorporated as though fully set forth herein.

2. On or about May 28, 1998, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

BAINBRIDGE MANAGEMENT, f/k/a BRADDOCK MANAGEMENT, L.P.,
ROGER EHMEN, and
DR. RAVI BARNABAS,

defendants herein, did knowingly and willfully execute and attempt to execute the above described scheme to defraud, in that, on or about on or about May 28, 1998, the defendants submitted, and caused to be submitted to Medicare, for the year 1997, a Cost Report, together with supporting documents and certifications, in order to obtain payments from the Medicare program, knowing that those documents included false representations, including the following:

a. The Cost Report for 1997 included a Certification falsely representing that services provided by the hospital were provided in compliance with the laws and regulations regarding the provision of health care services, when, in fact, the defendants each knew that the defendants had violated and caused others to violate certain laws and regulations regarding the provision of health care services, including the laws and regulations pertaining

26

to kickbacks, medically unnecessary services, and the waiver of co-payments and deductibles; and

b. The Cost Report for the year 1997, included a Provider Cost Report Reimbursement Questionnaire, which contained the false representation that there had been no waivers of Medicare deductibles and/or co-payments during the calendar year of 1997, when in fact, the defendants had waived and caused to be waived deductibles and/or co-payments in order to induce patients to be admitted to Edgewater Hospital;

In violation of Title 18, United States Code, Sections 1347 and 2.

27

## COUNT THIRTY-SIX

### Health Care Fraud:  The 1998 Cost Report

The SPECIAL NOVEMBER 1999 GRAND JURY further charges:

1.   Paragraphs 1 and 2 of Count Nine of this indictment are realleged and incorporated as though fully set forth herein.

2. On or about June 19, 1999, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

BAINBRIDGE MANAGEMENT, f/k/a BRADDOCK MANAGEMENT, L.P.,
ROGER EHMEN, and
DR. RAVI BARNABAS,

defendants herein, did knowingly and willfully execute and attempt to execute the above described scheme to defraud, in that, on or about June 19, 1999, the defendants submitted, and caused to be submitted to Medicare, for the year 1998, a Cost Report, together with supporting documents and certifications, in order to obtain payments from the Medicare program, knowing that those documents included false representations, including the following:

a.   The Cost Report for 1998 included a Certification falsely representing that services provided by the hospital were provided in compliance with the laws and regulations regarding the provision of health care services, when, in fact, the defendants each knew that the defendants had violated and caused others to violate certain laws and regulations regarding the provision of health care services, including the laws and regulations pertaining to kickbacks, medically unnecessary services,  and the waiver of

28

co-payments and deductibles; and

b.    The Cost Report for the year 1998, included a Provider Cost Report Reimbursement Questionnaire, which contained the false representation that there had been no waivers of Medicare deductibles and/or co-payments during the calendar year of 1998, when in fact, the defendants had waived and caused to be waived deductibles and/or co-payments in order to induce patients to be admitted to Edgewater Hospital;

In violation of Title 18, United States Code, Sections 1347 and 2.

## COUNTS THIRTY-SEVEN THROUGH FIFTY-ONE

### Kickbacks: Payments to Dr. Rao

The SPECIAL NOVEMBER 1999 GRAND JURY further charges:

1. Paragraph 1 of Count One of this indictment is realleged and incorporated as though fully set forth herein.

2. On or about the dates set forth below, each such date constituting a separate count of this indictment, at Chicago, in the Northern District of Illinois, Eastern Division,

BAINBRIDGE MANAGEMENT, f/k/a BRADDOCK MANAGEMENT, L.P.,
ROGER EHMEN, and
DR. RAVI BARNABAS,

defendants herein, together and with others known and unknown to the grand jury, did knowingly and willfully pay and offer to pay, and cause others to pay and offer to pay, money to Rao, through his companies Rao M.D., S.C. and Florascribe, on or about the dates set forth below, in exchange for Rao's referring individuals, and causing others, including Kumar, to refer individuals to Edgewater for the furnishing, and arranging for the furnishing, of items and services for which payment could be made, in whole or in part, under the Medicare or Medicaid program, as follows:

| COUNTS | DATE | AMOUNT | COMPANY |
|--------|---------|----------|-------------------|
| 37 | 9/15/97 | $15,000 | Rao, M.D., S.C. |
| 38 | 10/14/97 | $15,000 | Rao, M.D., S.C. |
| 39 | 11/14/97 | $15,000 | Rao, M.D., S.C. |
| 40 | 12/15/97 | $15,000 | Rao, M.D., S.C. |
| 41 | 1/14/98 | $15,000 | Rao, M.D., S.C. |
| 42 | 2/10/98 | $15,000 | Rao, M.D., S.C. |
| 43 | 3/12/98 | $15,000 | Rao, M.D., S.C. |
| 44 | 4/10/98 | $15,000 | Rao, M.D., S.C. |
| 45 | 5/12/98 | $15,000 | Rao, M.D., S.C. |

| 46 | 8/18/97 | $20,000 | Florascribe |
| 47 | 10/20/97 | $20,000 | Florascribe |
| 48 | 11/26/97 | $20,000 | Florascribe |
| 49 | 1/14/98 | $20,000 | Florascribe |
| 50 | 2/10/98 | $20,000 | Florascribe |
| 51 | 3/9/98 | $20,000 | Florascribe |

In violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A), and Title 18, United States Code, Section 2.

## COUNTS FIFTY-TWO THROUGH FIFTY-SIX

### Kickbacks:  Payments to Kumar

The SPECIAL NOVEMBER 1999 GRAND JURY further charges:

1. Paragraph 1 of Count One of this indictment is realleged and incorporated as though fully set forth herein.

2. On or about the dates set forth below, each such date constituting a separate count of this indictment, at Chicago, in the Northern District of Illinois, Eastern Division,

BAINBRIDGE MANAGEMENT, f/k/a BRADDOCK MANAGEMENT, L.P.,
ROGER EHMEN, and
DR. RAVI BARNABAS,

defendants herein, together and with others known and unknown to the grand jury, did knowingly and willfully pay and offer to pay, and cause others to pay and offer to pay, money to Kumar, which monies were paid through his relatives, on or about the dates set forth below, in exchange for Kumar's referring individuals to Edgewater for the furnishing, and arranging for the furnishing, of items and services for which payment could be made, in whole or in part, under the Medicare or Medicaid program:

| COUNT | DATE | PAID TO | AMOUNT |
|-------|------|---------|--------|
| 52 | 7/13/97 | Kumar's Relatives | $12,000 |
| 53 | 9/13/98 | Kumar's Relatives | $12,000 |
| 54 | 3/20/98 | Kumar's Relatives | $12,000 |
| 55 | 4/16/98 | Kumar's Relatives | $12,000 |
| 56 | 5/22/98 | Kumar's Relatives | $12,000 |

In violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A), and Title 18, United States Code, Section 2.

### COUNT FIFTY-SEVEN

### Racketeering

The SPECIAL NOVEMBER 1999 GRAND JURY further charges:

1. Paragraphs 1 and 3 through 14 of Count One this indictment are realleged and incorporated as though fully set forth herein.

2. At times material herein:

### The Enterprise

a. Defendants BRADDOCK, EHMEN, BARNABAS, and RAO, together with Kumar and others, were members and associates of an enterprise, as defined by Title 18, United States Code, Section 1961(4), that is, an association in fact comprised of the above named entity and individuals.

b. The enterprise engaged in interstate commerce, and its activities affected interstate commerce.

### Purposes of the Enterprise

3. The purposes of the enterprise included the following:

a. Enriching the members and associates of the enterprise through, among other things, mail fraud, wire fraud, and health care fraud.

b. Promoting and enhancing the enterprise and its members' and associates' activities.

c. Concealing the nature and origin of the proceeds of the frauds perpetrated by the enterprise.

### Means and Methods of the Enterprise

4. Among the means and methods by which the defendants and their associates conducted and participated in the conduct of the affairs of the enterprise were the following:

a. Members and associates of the enterprise hospitalized certain patients, and caused others to hospitalize certain patients, knowing that those patients did not need to be treated in a hospital and did not meet medical criteria for hospitalization.

b. Members and associates of the enterprise performed, and caused others to perform, medically unnecessary procedures and testing on certain patients.

c. Members and associates of the enterprise gave and caused others to give kickbacks, bribes, monies and other incentives (hereinafter referred to as "kickbacks") to doctors and other individuals in exchange for patient admissions; and

d. Members and associates of the enterprise, concealed and caused others to conceal, from certain patients, material information concerning the payment of kickbacks in exchange for admissions, including the fact that those kickbacks were intended to, and did, influence the decisions of certain doctors, thereby depriving those patients of their doctors' honest services.

34

e. Members and associates of the enterprise generated hospital admissions, and caused others to generate hospital admissions, by giving patients cash or other benefits, by coaching patients to lie about their physical condition, by promising that hospital services would cost the patients nothing, and by falsely representing to certain patients that they needed to be hospitalized, knowing that those patients did not need hospitalization.

f. Members and associates of the enterprise created, and caused others to create, false records to justify and support claims submitted to insurers, including false medical records and false business records.

g. Members and associates of the enterprise submitted and caused others to submit Cost Reports to Medicare, knowing that the Cost Reports contained false statements.

h. Members and associates of the enterprise submitted, and caused others to submit, fraudulent claims to Medicare, Medicaid and certain private health care insurers, which included charges for (i) medically unnecessary admissions, services, procedures, and testing; and (ii) for services rendered to patients who were referred to the hospital in exchange for kickbacks. Those fraudulent claims resulted in payments by the insurers that totaled at least $1,000,000.

35

5. Beginning no later than in or about October 1996, and continuing until at least in or about October 1998, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

BAINBRIDGE MANAGEMENT, f/k/a BRADDOCK MANAGEMENT, L.P.,
ROGER EHMEN,
DR. RAVI BARNABAS,
DR. SHESHIQIRI RAO VAVILIKOLANU, a/k/a DR. RAO,

defendants herein, together with Kumar, and others, being persons employed by or associated with an enterprise engaged in, and the activities of which affected interstate commerce, together with others known and unknown to the grand jury, knowingly, intentionally and unlawfully conducted the affairs of the enterprise, and participated in the conduct of the affairs of the enterprise, directly and indirectly, through a pattern of racketeering activity, as defined in Title 18, United States Code, Section 1961, said pattern of racketeering activity consisting of the following racketeering acts:

## RACKETEERING ACTS ONE THROUGH SIX

### Mail Fraud: Payments re Kumar's Patients

6. On or about the dates set forth below, defendants BRADDOCK, EHMEN, and BARNABAS committed the acts of mail fraud, Acts 1 through 6, identified below, in violation of 18 U.S.C. § 1341, having devised and for the purpose of executing the scheme set forth in Paragraphs 1 through 14 of Count One of this indictment, by knowingly causing to be delivered by mail, on or about the dates identified below, according to the directions

36

thereon, envelopes, each envelope containing a check from an insurer as identified below, made payable to Edgewater, which included payment in the approximate amounts set forth below, relating to the patients identified below, who were each referred to Edgewater by Kumar as part of the scheme described above, which envelopes were each addressed to Edgewater, in Chicago, Illinois. Those mailings constitute Racketeering Acts 1 through 6 as set forth below:

| ACT | PATIENT | DATE | APPROX. AMOUNT | INSURER | CHECK # |
|-----|---------|------|----------------|---------|---------|
| 1 | J. And. | 6/11/98 | $4,757 | Medicaid | 81600236 |
| 2 | C. Arn. | 6/10/98 | $2,450 | Unicare | 10537251B |
| 3 | R. Har. | 5/18/98 | $2,378 | Medicaid | 81340116 |
| 4 | L. Mur. | 9/10/98 | $1,965 | Prudential | 0732961 |
| 5 | I. Str. | 6/20/97 | $4,274 | Central States | 00072454 |
| 6 | T. Ran. | 7/17/98 | $ 926 | Central Steel | - |

## RACKETEERING ACTS SEVEN AND EIGHT

### Wire Fraud: Payments re Kumar's Patients

7.    On or about the dates set forth below, defendants BRADDOCK, EHMEN, BARNABAS, and RAO committed the acts of wire fraud identified below, in violation of 18 U.S.C. § 1343, having devised and for the purpose of executing the scheme set forth in Paragraphs 1 and 3 through 14 of Count One of this indictment, by knowingly causing to be transmitted in interstate commerce from Indianapolis, Indiana, to Chicago, Illinois by means of wire and radio communications, certain signs, signals and sounds, namely: the electronic wire transfer of funds, which included payments in the approximate amounts listed below, to Edgewater relating to the individuals listed below, who were each referred to Edgewater by Kumar as part of the above described scheme. Those wire transfers constitute Racketeering Acts 6 and 7 as set forth below:

| ACT | PATIENT | DATE | APPROX. AMT | INSURER |
|-----|---------|------|-------------|---------|
| 7 | J. Aus. | 8/25/97 | $6,876 | Medicare |
| | | | | |
| 8 | I. Bro. | 4/30/97 | $4,972 | Medicare |

All in violation of Title 18, United States Code, Section 1962(c).

38

## COUNT FIFTY-EIGHT

### Racketeering Conspiracy

The SPECIAL NOVEMBER 1999 GRAND JURY further charges:

1. Paragraphs 1 through 4 of Count 57 of this indictment are realleged and incorporated as though fully set forth herein.

2. Beginning no later than in or about October 1996, and continuing until at least in or about December 2000, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

ROGER EHMEN, and
DR. RAVI BARNABAS,

defendants herein, together with Rao, Kumar, and others, being persons employed by or associated with an enterprise engaged in, and the activities of which affected, interstate commerce, that is, an association in fact of the above named individuals, together with persons known and unknown to the grand jury, knowingly and intentionally conspired to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Section 1961(1) and Section 1961(5). The pattern of racketeering activity through which defendants agreed to conduct the affairs of the enterprise consisted of multiple acts indictable under Title 18, United States Code, Sections 1341 and 1343 (mail fraud and wire fraud).

3.    It was a part of the conspiracy that each of the defendants agreed that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the enterprise;

All in violation of Title 18, United States Code, Section 1962(d).

40

## FORFEITURE ALLEGATION I

The SPECIAL NOVEMBER 1999 GRAND JURY further charges:

1. The allegations contained in Counts 57 and 58 of this indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to the provisions of Title 18, United States Code, Section 1963.

2. Defendants BRADDOCK, EHMEN, BARNABAS, and RAO:

(a) have acquired and maintained interests in violation of Title 18, United States Code, Section 1962, which interests are subject to forfeiture to the United States, pursuant to Title 18, United States Code, Section 1963(a)(1); and

(b) have property constituting, and derived from, proceeds obtained directly and indirectly from the aforesaid racketeering activity, in violation of Title 18, United States Code, Section 1962, which property is subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(3).

3. The interests of the defendants subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1) and (a)(3) include but are not limited to the following assets:

a. Approximately $1,000,000 and all proceeds traceable thereto.

41

4. To the extent that the proceeds described above as being subject to forfeiture pursuant to Title 18, United States Code, Section 1963, as a result of any act or omission of the defendants:

        a. cannot be located upon the exercise of due diligence;

        b. have been transferred to, sold to, or deposited with a third person;

        c. have been placed beyond the jurisdiction of the court;

        d. have been substantially diminished in value, or

        e. have been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 1963(m) to seek forfeiture of any other property of said defendants up to the value of the said property listed above as being subject to forfeiture.

5. Defendants BRADDOCK, EHMEN, BARNABAS and RAO are jointly and severally liable for the amount determined to be subject to forfeiture;

All pursuant to Title 18, United States Code, Section 1963.

## FORFEITURE ALLEGATION II

The SPECIAL NOVEMBER 1999 GRAND JURY further charges:

1.    The Grand Jury realleges and incorporates by reference the allegations in Counts 9 through 36 of this indictment for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 982.

2.    As a result of the violation of Title 18, United States Code, Section 1347, as charged above, in Counts 9 through 36,

BAINBRIDGE MANAGEMENT, f/k/a BRADDOCK MANAGEMENT, L.P.,
ROGER EHMEN,
DR. RAVI BARNABAS,
DR. KUMAR M. KALIANA, a/k/a DR. KUMAR,

defendants herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(7), jointly and severably, any and all right, title, and interest each may have in any property, real or personal, that constitutes or was derived, directly or indirectly, from gross proceeds traceable to the commission of the offenses charged in Counts 9 through 36, including, but not limited to the approximate amount of $1,000,000, in that such sum was obtained as a result of the offenses charged in Counts 9 through 36.

3.    If any of the property described above, as a result of any act or omission by the defendants:

>    (a)    cannot be located upon the exercise of due
>           diligence;

43

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute assets under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1).

All pursuant to Title 18, United States Code, Section 982.

A TRUE BILL:

_____
FOREPERSON

_____
UNITED STATES ATTORNEY

44

No.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

UNITED STATES OF AMERICA

vs.

BAINBRIDGE MANAGEMENT, f/k/a BRADDOCK
MANAGEMENT, L.P., et al

## I N D I C T M E N T

Violations: 18 USC 1341, 1343, 1347, 1962,
1963, 982, Title 42 USC 1320a-7b(b)

A true bill,

_____
Foreman

Filed in open court this 17th day of May A.D. 20 2001

MICHAEL W. DOBBINS

_____
Clerk

Bail, $ _____

PO 880.320